UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FRED BIELER, GUARDIAN FOR GASPER URSO, § § § Plaintiff, § § v. § § HP DEBT EXCHANGE, LLC, a Texas § limited liability company, HP LOCATE, § LLC, a Texas limited liability company, and § CHRIS GANTER, Individually, § § Defendants. § | Civil Action No. 3:13-cv-01609 |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Request for Entry of Default and Default Judgment against HP Debt Exchange, LLC ("HP Debt Exchange"), HP Locate, LLC ("HP Locate"), and Chris Ganter ("Ganter") (collectively "Defendants") [Docket Entry #7]. Plaintiff Fred Bieler, guardian for Gasper Urso, ("Plaintiff") sued Defendants for: (1) default on a promissory note; (2) breach of contract; (3) turnover of common shares and for forfeiture and sale by Plaintiff of security interest in common shares; and (4) attorney's fees and costs. Plaintiff properly served each Defendant with a copy of the Summons and Complaint on May 7, 2013. Defendants failed to answer or otherwise respond within twenty-one days, as required by Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(a)(1)(A). The Clerk entered default against Defendants on June 14, 2013. Default judgment is appropriate because the facts, taken as true, show that Defendants failed to make the requisite interest payments on the promissory note, service was proper, and the Defendants have failed to respond. Therefore, the Court **GRANTS** Plaintiff's Request for Default Judgment.

I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises out of Defendants' alleged failure to make payments on a promissory note. On June 25, 2012, HP Debt Exchange and HP Locate executed and delivered to Plaintiff a Secured Promissory Note ("Note") with a principal of $250,000. *Pl.'s Compl.* at 3. The Note was to bear interest in the amount of thirty-six percent per annum, compounded annually. *Id.* Under the Note, HP Debt Exchange and HP Locate owed monthly interest-only payments on the first day of each month from August 1, 2012 to July 1, 2013, when the full principal amount came due.[2] *Id.* Contemporaneously with the execution of the Note, Ganter executed an individual Personal Guaranty, whereby he obligated himself to apply all sums and perform all obligations due under the Note. *Id.* The Note was secured by: (1) an unsecured second lien mortgage debt portfolio owned by HP Debt Exchange that consisted of $75,000,000 of Unsecured Second Lien Mortgages, and (2) by a UCC-1 filing on 3,500 shares of United Postal Service stock owned by Ganter, which could be liquidated by Plaintiff in the event of default. *Id.* at 4.

Paragraph five of the Note, entitled "Events of Default," authorizes Plaintiff to take legal action to declare the principal, interest, and all other amounts immediately due upon default. *Id.* at 5. Events of default include "failure to pay any portion of the principal of the Note or interest accrued thereon, when due." *Id.*

Beginning in September 2012, Defendants failed to make their payments. *Pl.'s Compl.* Ex. C at 2. Although not required by the Note, on January 23, 2013, Plaintiff sent a demand

---

[1] The Court accepts as true the facts alleged by Plaintiff in its Complaint and supporting affidavits, as the Defendants have failed to answer. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[2] All payments were to be applied first to the interest accrued. In the event of payment in full before full payment was due, Plaintiff was entitled to all of the interest that would have accrued through the whole term of the loan ($90,000.00 on a twelve month term). *Pl.'s Compl.* at 4.

letter to HP Locate and Ganter, alerting them that default had occurred and that the acceleration clauses had been triggered.  *Pl.'s Compl.* at 5.  Plaintiff received no response, and sent a second demand letter on February 4, 2013, again stating that the principal balance had accelerated and become due.[3]  *Id.*  Defendants failed to respond to either letter, prompting Plaintiff to file this action.  *Id.* at 6.

Plaintiff, through a private process server, served each of the Defendants on May 7, 2013.  *Pl.'s Request for Default and Default Judgment* Ex. A-2, A-3, A-4.  Defendants' deadline to respond or answer was May 28, 2013.  *Pl.'s Request* at 2.  To date, Defendants have yet to respond.  *Id.*  As a result of Defendants' failure to respond, Plaintiff requested an entry of default from the Clerk and default judgment from this Court [Docket Entry #7].[4]  The Clerk entered default against each of the Defendants on June 14, 2013 [Docket Entry #8].

II.   LEGAL STANDARD

Rule 55 governs applications for default and default judgment.  Fed. R. Civ. P. 55.  Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment.  *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure.  *Id.*  The Clerk will enter a default when the party's default is established by an affidavit or otherwise.  *Id.*  After the entry of default, a plaintiff may apply to the court for a default judgment.  *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations.  *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).  However, it is a

---

[3] HP Debt Exchange was not sent a copy of either letter.  *Pl.'s Compl.* at 5.

[4] Although the Request for default judgment also appears to be directed to the Clerk under Rule 55(b)(1), communication between the Clerk and the filing attorney clarified Plaintiff's intent for this Court to address the merits of the Request under Rule 55(b)(2).  Fed. R. Civ. P. 55.

remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether to enter default judgment, district courts should examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

### III.   DISCUSSION

Defendants have failed to plead or otherwise respond within the twenty-one days allotted under the Federal Rules, a fact that Plaintiff has demonstrated via affidavit. *See* Fed. R. Civ. P. 12(a)(1)(A)(i); *Pl.'s Request* Ex. A at 3. Therefore, the Clerk properly entered default against the Defendants [Docket Entry #8].

In determining whether default judgment is appropriate, the Court turns to the factors outlined in *Lindsey*. 161 F.3d at 893. These factors favor granting default judgment. There are no material issues of fact at issue here; because Defendants have failed to respond, this Court takes the facts from Plaintiff's pleading as true. *See Nishimatsu*, 515 F.2d at 1206. There has been no substantial prejudice against the Defendants; HP Locate and Ganter were provided with two notifications regarding the acceleration of the Note, and all Defendants were properly served. The grounds for default were clearly established, and the Clerk properly entered default against all Defendants. Entering default judgment against Defendants, who have taken no action to satisfy their debts, or respond to this action, is not "harsh." *See Lindsey*, 161 F.3d at 893. Because there has been no communication from the Defendants, the Court is aware of no good faith mistake or excusable neglect to which Defendants' failure to appear may be attributed.

Without this knowledge, or any information pertaining to a potential meritorious defense, the Court would not feel obligated to set aside the judgment.  The Court thus concludes that default judgment is appropriate.

Having so concluded, the Court must determine whether damages can be calculated without a hearing, pursuant to Rule 55(b)(2).  Fed. R. Civ. P. 55(b)(2).  In the default judgment context, damages may "be entered without a hearing" if "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  That is, a hearing is not necessary where the amount of damages can be determined with certainty, by reference to the pleadings and supporting documents, and where a hearing would not be beneficial.  *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. CIV 3:08-cv-00341, 2009 WL 2003369, *3 (N.D. Tex. July 10, 2009) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

Plaintiff established in his Complaint, Request, and supporting documentation, that he is entitled to recover the principal amount of the Note—$250,000.[5]  The Note demonstrates that Defendants were liable for the full balance of the principal in the event of default.  *Pl.'s Compl.* Ex. A.  Plaintiff's Complaint, taken as true, establishes that Defendants did, in fact, default.  Defendants' one payment appears, pursuant to the Note's terms, to have been an interest-only payment that did not affect the principal.  *Pl.'s Compl.* Ex. C. at 2.  Plaintiff also established that he is entitled to an award of post-judgment interest under 28 U.S.C. § 1961.[6]  *See Pl.'s Compl.* Ex. A at 2.  The current rate of post-judgment interest is 0.13%, which is to be computed daily

---

[5] Despite Plaintiff's apparent contractual right to the full $90,000 in interest on the principal, Plaintiff did not pray for that amount, either in the Complaint or the Request for judgment.
[6] 28 U.S.C. § 1961 states that interest shall be allowed on any money judgment in a civil case recovered in a district court.

and compounded annually.[7] Thus, the damages, including post-judgment interest, can be computed by reference to the affidavits, the Note, the Complaint, and other supporting documentation.

Courts may award reasonable attorney's fees and costs without a hearing, as well, if they can be computed with certainty by reference to the pleadings and supporting documents alone. *James*, 6 F.3d at 311. The Fifth Circuit uses the "lodestar" method to calculate reasonable attorney's fees. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community. *Heidtman*, 171 F.3d at 1043 (citing *Shipes v. Trinity Industries*, 987 F.2d 311, 319–20 (5th Cir. 1993)). Courts may modify the lodestar based on the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[8] *Heidtman*, 171 F.3d at 1043.

Here, Plaintiff requests reasonable attorney's fees pursuant to Texas Civil Practice and Remedies Code § 38.001, which allows an individual to recover attorney's fees in actions based on oral and written contracts, among other things. Tex. Civ. Prac. & Rem. Code § 38.001. The asserted causes of action are based on the Note and the Personal Guaranty, both of which are written contracts. Moreover, Plaintiff has established, by affidavit, the hours worked and rates

---

[7] *See* 28 U.S.C. § 1961; *see also* http://www.federalreserve.gov/releases/h15/current/ (Last accessed June 24, 2013).

[8] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d 717–19.

charged by his attorneys.[9]  *Pl.'s Request* Ex. A at 3-4.  These fees, coupled with the documented costs, total $8,693.00.  *Id.*  The Court concludes that these rates are customary in the community, and that the fees and costs requested are reasonable.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that:

1. Default judgment shall be entered for Plaintiff in the amount of $250,000.00, plus post-judgment interest thereon, at the rate of 0.13%, which is to be computed daily; and

2. Plaintiff is awarded reasonable attorney's fees and costs in the amount of $8,693.00.

**SO ORDERED**.

June 28, 2013.

*[signature]*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[9] Attorney Herbert J. Gilles spent approximately 26.9 hours preparing the notices of intent to accelerate and the Complaint, conducting research, and communicating with Plaintiff.  *Pl.'s Request* Ex. A at 3.  Gilles' hourly billing rate is $250.  Attorney Vernon A. Nelson spent approximately 1.6 hours on the case and has an hourly billing rate of $250.  Attorney Michael C. Barbee spent 5.7 hours on the case at a billing rate of $200.  Additionally, Plaintiff incurred $428 in costs.